## WOODWARD *vs.* DONALLY.

[DETINUE BY INFANT FOR SLAVES SOLD BY HIS GUARDIAN.]

1. *Guardian's power, if unrestrained by statute, over ward's personal estate.*—A guardian has power, if not restrained by statute, to sell his ward's personal estate without an order of court, and his sale will convey a good title to 'a *bona fide* purchaser ; and therefore, if a guardian, appointed in Tennessee, sells his ward's slave in this State to a *bona fide* purchaser, the infant cannot recover him without making proof of the statute law of Tennessee.

APPEAL from the Circuit Court of Franklin.

Tried before the Hon. THOMAS A. WALKER.

DETINUE by the appellant, an infant who sued by his next friend, to recover a negro woman, named Amanda, and her children, whom he claimed under the will of his grandfather, Joseph Cook, which was duly admitted to probate in Davidson county, Tennessee, in February, 1841 ; while the defendant derived title by purchase for valuable consideration from

one Isaac Rutland, who was regularly appointed plaintiff's guardian in said county of Davidson, Tennessee, and who afterwards brought the slaves to this State, and sold them to the defendant. On the trial, the plaintiff offered in evidence a certified copy of his said grandfather's will, with the probate thereof; also, a certified copy of the statute law of Tennessee regulating the probate of wills; a certified transcript from the records of the County Court of Davidson county, Tennessee, showing the appointment of said Rutland as his guardian; and a copy of his guardian's bond, the condition of which was as follows: "Now, if the said Isaac Rutland shall faithfully execute his guardianship, by securing and improving all the estate of his said ward that shall come to his possession, for the benefit of his said ward, until he shall arrive at full age, or be sooner thereto required, and then render a plain and true account of his guardianship, on oath, before the justice of our said court, and deliver up, pay to, or possess his said ward of all such estate as he ought to be possessed of, or to such other persons as shall be lawfully authorized to receive the same, and the profits arising therefrom, then this obligation to be void," &c. It was also shown, that said Rutland, as plaintiff's guardian, received possession of the negroes now sued for in said county of Davidson; that he afterwards brought them to this State, and sold them to the defendant in Franklin county; that the sale was made to raise money for the purpose of paying plaintiff's expenses at a medical school, and that a portion of the proceeds of sale was thus appropriated. The defendant produced his bill of sale, and admitted his possession, the value of the slaves, &c.

The court charged the jury, " that if they believed from the evidence that said Rutland had possession of the negroes sued for, as guardian of the plaintiff, in the State of Tennessee, as the common law authorized a guardian to sell the personal property of his ward, in the absence of any evidence of the statute laws of Tennessee changing the common law upon the subject, the sale of the negroes to the defendant was valid, although made in the State of Alabama. To this charge the plaintiff excepted, and then asked the court to charge, 1st, that a guardian appointed in Tennessee is not authorized to sell negroes belonging to his ward in Alabama, and the de-

fendant as purchaser from him acquired no title ; and, 2dly, that if the jury believed from the evidence that defendant purchased the negroes, in this State, from one who held possession of them as plaintiff's guardian in the State of Tennessee, and that he sold and executed to defendant a bill of sale for said negroes in his individual name, and not as guardian, then defendant acquired no title by his purchase. Both of these charges were refused by the court on the ground that there was no evidence of the statute law of Tennessee, changing the common law in reference to the power of guardians over the personal property of their wards ; to which refusals the plaintiff excepted." In consequence of these rulings of the court, the plaintiff was forced to take a nonsuit ; which he now moves to set aside, and assigns for error the charge given and the refusals to charge as requested.

JOHN A. NOOE, for the appellant :

1. The common law only recognized guardians of real estate, such as guardians in socage, and guardians in chivalry ; and there were, also, guardians by nature, and for nurture, who had control over the person, but not over the property of minors. As to the personalty, there was no guardian at common law : the king was the universal guardian of all infants, and he afterwards delegated his authority to his lord chancellor ; and hence the jurisdiction of chancery over the persons and property of infants, both in England and the United States, except where it is taken away by statute.—1 Black. Com. 461–62 ; 2 Kent's Com. 218, 226.

2. In most of the States of the Union there are statutes conferring on the Orphans' or County Courts jurisdiction over the estates of minors, and statutory provisions authorizing guardians, under certain circumstances, to sell the property of their wards by order of court. All such statutes are enabling, and not restraining statutes, and tend to show that guardians, independent of statutory regulations, have no right to sell the property of their wards. Rutland was a statutory guardian, appointed in Tennessee ; and the condition of his bond, which was in evidence, required him to keep the property, and to have it ready to deliver to his ward when he arrived at full age. This bond was as strong evidence of his

want of authority to sell, as an express prohibitory statute; and he was as much bound by his bond, which must be presumed to have been taken in accordance with the statute, as he could have been by a statute.

3. The title to the ward's property is in himself, and not in his guardian; and hence all actions involving the title must be brought in his own name, and not in the name of his guardian.—Sutherland v. Goff, 5 Port. 508 ; McLeod v. Mason, *ib.* 223. If the title is not in the guardian, how can he convey a good title to another ? A guardian cannot change the nature of his ward's estate, except by some act manifestly for the ward's advantage, or by leave of the court of chancery.— 1 Black. Com. 463 (m. p.), note ; Amb. 370; 1 Vern. 435; 2 P. Wms. 278. That a purchaser from a trustee, who is not authorized to sell personalty, acquires no title by his purchase, see Hester v. Wilkinson, 6 Humph. 215.

WM. COOPER, with whom was R. W. WALKER, *contra,* contended that the sale and appropriation by the guardian, under the circumstances of the case, was proper, and that (whether or not the sale was proper) the guardian could, by the rules of the common law, sell his ward's personal estate, and convey a good title to the purchaser ; and he cited the following authorities : Field v. Schieffelin, 7 Johns. Ch. 154 ; Bank of Virginia v. Craig, 6 Leigh, 399; Hopper v. Steele, 18 Ala. 835–37; 3 Salk. 177; 1 Bla. Com. 463, (note) ; Coke's Inst. 55, 99; 1 Parsons on Contracts, p. 114.

CHILTON, C. J.—The question for decision may be thus stated :—If a guardian, duly appointed by the laws of Tennessee, bring personal property of his ward (a slave) to this State, and sell it to a *bona fide* purchaser, can the ward, in the absence of all proof of the statute laws of Tennessee, as respects the power of the guardian to make such sale, treat such sale as a nullity, and recover the property ? The Circuit Court held the sale to be valid—that is, that the purchaser should be protected ; and such is our opinion. We have seen no case which, upon common-law principles, uninfluenced by the statute law, has affirmed a contrary doctrine. On the other hand, the authorities are generally agreed, that the

guardian, if not restrained by statute, may sell the personal estate without an order of court, and the title of the person who purchases in good faith will be protected.

In Field v. Schieffelin, 7 Johns. Ch. R. 154, the chancellor (Kent) said,—"Though it be not in the ordinary course of the guardian's administration to sell the personal property of his ward, yet he has the legal right to do it; for it is entirely under his control and management, and he is not obliged to apply to this court for direction in every particular case."

In Inwood v. Twyne, Amb. 419, Lord Hardwicke held, that guardians and trustees may change the nature of infants' estates where it is manifestly for the infant's benefit"; that is, the court will sanction that which it would have ordered.

Chancellor Kent, in his Commentaries, vol. 2, p. 293, edit. of 1850, says,—"He" (the guardian) "may sell the personal estate for the purposes of the trust, without a previous order of the court,"—citing the case in 7th Johns. Ch. Rep., *supra*, and Ellis v. Essex M. Bridge, 2 Pick. R. 243 ; and in a note (b) to same page, the author says : " The sale of personal estate of the infant *cestui que trust*, without a previous order in chancery, if fair, would undoubtedly be good as to the purchaser, but the safer course would be for the guardian to obtain a previous order in chancery."

So, also, Parsons, in his work on Contracts, p. 114, says,— " He manages and disposes of the personal property at his own discretion, although it is safer for him to obtain the authority of the court for any important measure," &c.

In Ellis v. Essex Merrimack Bridge, 2 Pick. R. 243, it was said—"A title under him, acquired *bona fide* by the purchaser, will be good, for he (the purchaser) cannot know whether the power has been executed with discretion or not." Perhaps the *dictum* in Hudson v. Holmes' Executors, 23 Ala. 589, as to the power of the guardian at common law over the personal assets of his ward, may not be, strictly speaking, correct. It impliedly concedes, however, that there may be cases where he may sell the personal property, by limiting his agency as not *ordinarily* extending to a sale of such property; and this is sufficient for the present case, as it was not for the purchaser to determine whether or not an extraordinary emergency demanded a sale. He might well have assumed

this, since the guardian was bound to act in good faith, and was liable to his ward on his official bond, if he failed to do his duty.

There is nothing in the condition of the guardian's bond, which forbids his making a sale of the slave, if the law, aside from the bond, did not forbid it. It binds the guardian to a faithful performance of his duties as such—to secure and improve the estate of the ward, to render on oath a true account of his guardianship, and to deliver up, pay to, and put the ward in possession of, " all *such estate as he ought to be possessed of*," &c. Now, whether he ought to be possessed of these slaves, depends upon the power of the guardian to make the sale, and the validity of the purchase; which is to be determined by the rules of the common law, no statute having been shown.

We are of opinion, that applying the rules of the common law to personal property in the hands of a guardian, which, being under his control and management, passed by delivery, his sale and delivery of it to a *bona fide* purchaser passed the title, and the purchaser was not bound to see to the application of the purchase money. We need hardly add, that the case before us is clearly distinguishable from the cases reported in our own books, which were governed by the statutes of this State.

There is no error in the record, and the judgment must be affirmed.